May it please the court, your honors, my name is Rayleigh Alford. I am here this morning on behalf of the defendants. I know that your honors are familiar with the briefing and I will move directly to the issue of absolute immunity that is before the court. Yes, your honor, absolutely. Our clients appealed the denial of absolute immunity for claims by five plaintiffs who have alleged that they received documents styled as subpoenas that were not actually backed by any legal authority. Those documents, according to the plaintiff's allegations, directed them to appear at the district attorney's office to speak with prosecutors about serious crimes that were being prosecuted. As characterized by the district court, those documents had no legal force and were nothing more than invitations by prosecutors to meet with them outside of court. The facts, even as alleged by the plaintiffs in their complaint, do not suggest that the defendants sought these meetings for any improper purpose, for any purpose other than to meet with them. Do you dispute the district court's characterization? That they had no legal effect? I do not dispute that, your honor. How would an average person know that? I get a subpoena from the district attorney to show up and I'm a normal person without a law degree, living my life. Would I not think I had to show up? Well, your honor, none of the five that have brought these claims actually did show up. And so I think that that gives a pretty good indication as to how those were received. Well, counsel, as you know far better than I, they all look the same, but one of them in the record says at the top, a fine in imprisonment may be imposed for failure to obey this notice. Now, a lot of people don't obey their legal obligations, but that is certainly telling the recipients of them that, asserting that there is a legal obligation and even imprisonment may follow. So it does seem to me with all due respect to your efforts to reduce the effect to the impropriety of these, these are pretty serious assertions of authority they did not have. Well, your honor, I think that the task under Embler, under Kuzan, under those authorities are to look at what is being asked and look at the context of when it's being asked. In each of these cases, you have pending prosecutions, they are proceeding to trial. The objective of that document is to get the witness into the office so that the prosecutors can meet with him or her and discuss the testimony. The district court, in her reasons, when she dismissed on absolute immunity grounds the claim of verbal threat, she wrote, and I quote, threatening witnesses, particularly verbally, with imprisonment to further witness cooperation in an active criminal prosecution seems to this court to fall into the category of pursuing a criminal prosecution as an advocate for the state. We submit, your honor, that putting a threat on paper and putting the seal of an office on the top left corner makes no difference in the law. I mean, it's really no different than if you had faked an order from the court saying, you know, order to show cause why Ms. Singleton didn't show up and gave that to her. You would not say that was subject to absolute immunity, I hope. Respectfully, your honor, this is, this was not a faked order of a court. I mean, the seal, or the seal of the district attorney's office. It was approved by the, you know, in order to do the subpoena, it would have to be approved by the court, and you're faking that by putting the seal on it. Your honor, there's, well, it was the seal of the district attorney's office, though, and look, I understand some of these distinctions are fine ones, but we think that that's important. There's no, there's no signature line on here for a judge. There's not even an allegation in this case that this was presented as a subpoena that was issued by a court, or by a clerk of court, who also in Louisiana is authorized to issue subpoenas. Are you saying that somehow justifies it? Certainly not. I mean, your honor, it's alleged in the complaint that the use of this form was discontinued and disapproved. But that's not really the question. What line are you drawing? Do you agree with me that if they had plagiarized, you know, if they had faked the signature of the judge on an order to show cause for Ms. Singleton after she didn't appear, that that would not be subject to absolute immunity? But you think faking a subpoena that is clearly improper under the law is within absolute immunity, so where is the line? Well, your honor, I don't know that the line exists at that point, and I think that it's part of the policy determination the Supreme Court made in Embler. I think that under either circumstance, the court still has to look at what is the function, what is the goal. So I think in both instances, the conduct may very well be subject to absolute immunity because the task is to look at what is being accomplished. That may very well be protected. I mean, what is the task that you want us to look at? You're saying that this is somehow noble or something because they're getting people, witnesses to come in, and I don't understand what's the proper task. Are you saying, are you trying to get us into what are the duties of the prosecutors and the general? Are you trying to make a legal argument or are you trying to make a factual argument justifying this? It's certainly a legal argument, and nowhere in our briefing did we suggest anything like this. Okay, so what is the legal, tell us what it is that we're supposed to look at that you want us to focus on. The focus, per this court's opinion in Kuzan, is whether the activity was engaged in pursuant to the function of an advocate. If you look at each of the cases that these five plaintiffs talk about, you had a pending prosecution. The district attorney certainly had the legal authority to bring those cases. And what the courts ask us to look at is that activity. In fact, this court has said time and again, it doesn't matter if the particular action is lawful or unlawful, proper or improper. What the courts are tasked with looking at is, is this part of the advocacy role of the prosecutor? It's been recognized since Imbler that preparing witnesses for trial, securing their testimony, these are all classic, classic tasks of the prosecutor. It happens every day. And in fact, Your Honor, you know, this court— So what's the classic task of the prosecutor here? Drafting fake documents, not a classic task of a prosecutor. I mean, what is the classic task? Coercing people to come in to talk to you when you don't have the right to do that, that's not a classic task. What are you saying? To interview potential witnesses? Is that where we're supposed to take it? What is the classic task here? Certainly what the courts say is preparing for the initiation of prosecution, classic prosecutorial task. Presenting the state's case at trial, classic prosecutorial task. Preparing witnesses, meeting with witnesses, actions to control the presentation of the witness's testimony. That was the language that the court used in Imbler. It recognized that all of those activities are part of the advocacy function of the prosecutor. This court— Was this preparing for trial or was this investigation, which we have not held as entitled to absolute immunity, I think in Hoog-Watson? It was absolutely preparing for trial, Your Honor. This court in Kuzan and in other cases has looked at did the conduct happen pre- or post-indictment. In each of these five cases alleged, your post-indictment, some of these documents went out even after the initial trial setting when trials had to be continued because witnesses were not appearing in court. In terms of the question of how this court views these issues, in the Kuzan case, there were allegations that prosecutors told defense witnesses to go to the office of the district attorney and stay there throughout the trial. That made those witnesses unavailable to the defendant when he wanted to call them in his own case. Now, this court was certainly troubled by that. It certainly didn't condone what it referred to as misconduct and as deceit. But the court said our task per Embler is to look at were they functioning as advocates? Was this intimately connected with the trial process? Not whether it's legal or illegal, not whether it's proper or improper. In most of these cases, the courts recognize we don't condone this activity, but we have to recognize that the Supreme Court has determined in Embler that the results in individual cases, which can absolutely be harsh, are justified for broader public policy reasons. What about the Ninth Circuit case in Lacey? Sure, Your Honor. I think that, back to Judge Elrod's point, that the conduct at issue there could certainly be classified as investigatory. That happened before there was ever an indictment, and in that case, which is a pretty extreme set of facts, you have Arizona Sheriff Joe Arpaio couldn't convince two different prosecutors to investigate a newspaper that was critical of him. And so he arranges for a friend and a personal lawyer to get appointed as a special prosecutor, and he goes out and issues subpoenas to a media outlet asking them to reveal their sources for articles that were critical of Sheriff Arpaio. And the lawyer. Your Honor, under the allegations of this case, there is not even a suggestion that these documents were sent out for a personal purpose, for an improper motive. The question is, has it been shown as a matter of law that it was solely to prepare witnesses as opposed to interview witnesses? Well, I think that this court in Kuzan even recognized that interviewing witnesses post-indictment is part of the prosecutor's function as an advocate. I think that that exact term was used, and that's the analysis of this court. That we look, although it's certainly not determinative in every case, it is highly relevant that the conduct happen post-indictment. You know, in a whole series of Supreme Court cases, we have been instructed that we're supposed to consider not only the practical function of the conduct, but secondly, whether at present absolute immunity for the conduct at issue is necessary to advance the policy interest to justify the common law immunity. What case can you possibly cite that this would be necessary to advance the policy interest to justify the common law immunity, given what the conduct at issue here is? Well, Your Honor, the courts have said time and again that we have to be careful not to be too narrow in how we define the conduct. But in terms of whether the rule we're proposing here fulfills the policy determinations of the court in Embler, we think they absolutely do. Take the case of Plaintiff Jane Doe. In her situation, she was the victim of child molestation and child pornography. Her abuser was her stepfather, and her mother hired an attorney who goes to communicate with the DA's office saying, I don't want you to speak with my child. Now, Your Honors, that creates a very challenging situation. And in that situation, without the protection of absolute immunity, the prosecutor's vigorous independent performance of his or her duty would certainly be compromised. He would fear that he might be sued if he didn't honor the mother's wishes and let the case go, or that a necessary difficult conversation with a victim to prepare for trial would be misconstrued and dissected in an action for damages. So at the end of the day, when the prosecutors say, look, we understand that you don't want to meet with us, but we need to meet with you, we submit that that has to be protected by the immunity. But there's all sorts of training available for prosecutors of how to deal with exactly that type of very unfortunate situation that tells, you know, they can go to the CPS people if the child is being mistreated. There's so many options that prosecutors are given specific training, and one of the options is not to fake up documents and threaten people. That is not in any of the proper prosecutorial training. You certainly don't think that they would be entitled for qualified immunity here, do you? Qualified immunity? I mean, this would not pass qualified. If you don't win absolute immunity, you're not entitled, your clients are not entitled to qualified immunity. At the end of the day, there is no violation of a constitutional right that is clearly established in preparing and sending out these documents. And so we certainly submit that the immunity— Threat of incarceration with no valid premise, when the person knowingly does that, it's not negligent, it's not a mistake, it's intentional? Your Honor, there are mechanisms under the law, under the material witness warrant, that allow that very thing, that allow incarceration. Right, but this was not nearly—why wasn't that sought then? Your Honor, if you look at some of the allegations in this case, that is very disruptive, being placed in jail. Some of these plaintiffs are suing for prolonged detention that are outside of the control of the DA's office. So because it would be disruptive to use the legal means, prosecutors are allowed to use illegal means? This argument is fascinating. But do you have a case that—the question that was premised on this about prong two of the basis for absolute immunity in the Supreme Court, I asked what was your best case that even under these circumstances, we would hold that it was satisfied? Do you have a case that you would turn us to? We've talked to you about cases we think might oppose you. What case do you—what's your best case? I think Imbler and this Court's decision in Cousin. I mean, again, when you look at the conduct that it addressed there, where you have— Cousin is the case that spelled Cousin? Yes. Okay. Yes. I think that they considered there, this Court considered there, all the arguments that Your Honors have raised. And it said time and again, look, we look at did this happen in the context of the prosecutor advocating the state's case for trial? And we submit that the holding in Cousin requires the district court to be reversed here on the issue of absolute— and actually, instead of just threatening incarceration or something, but they actually physically detained them? Would you still be arguing for absolute immunity because it was to facilitate—I know your time's up, but can you answer the question? Sure. Your Honor, because I had the same question. Good. In 1991, the Supreme Court took up the case of Miralis v. Waco. Now, in that case, a lawyer showed up late for court. The judge told the deputies, go get this lawyer and use extreme force to do so. Okay? The Supreme Court took up and summarily reversed the Ninth Circuit where immunity was denied. And they said, wait a minute, this is part of the judicial function. Now, did it go too far? Yes. But we don't make an exception to immunity based on the premise that the judge exceeded the authority. Now, in a dissent— That's a different kind of case, though, because they had the right to pick up the lawyer. In this case, there is no right to pick up the person to begin with. So whether they used a certain degree of force in the detention is a different question of whether the detention itself is constitutional, an appropriate exercise of constitutional immunity. Your Honor, in Kuzan, this court used the word detaining, and it still said even detaining the witnesses, even doing so improper and keeping them away from the defendant who was exercising his constitutional right to put on his defense, the immunity still applies. So, Your Honor, you're asking questions that are good ones that come up time and again in these cases. But at the end of the day, where the courts land is that because this is part of the prosecutor's function as an advocate in representing the state in the pending case, the immunity has to apply. Thank you, Counsel. You've saved time for rebuttal. Thank you, Your Honor. You may proceed. Catherine Chamblee Ryan for the appellees, Your Honor. May it please the court. The narrow question before this court is whether a prosecutor is immune from suit when he steps into a role that is exclusively reserved for the judiciary. Counsel, let me make sure if I can follow your argument. Are you first telling me who are these witnesses who are getting the subpoena? This is a suggestion by your opponent that they were preparing for trial. Indictments already happened. You do have the emerald line that talks about matters that are beyond the investigatory side but are looking more at the advocacy side for trial or whatever the proceedings may be. So who are these witnesses? Where are they in the process? What's in the evidence in the record now as to what we can say? The prosecution already knew. Were they developing whether these were worthwhile witnesses or they already knew they were worthwhile witnesses? Could you help me with that? Your Honor, to answer that question, defendant's argument is essentially that the conduct at issue in this case, which is purporting to have authority that only the court has, which is to compel witnesses to meet with them by force of law, is immune just because it has a goal that's immune. But that's contrary to how this would work. You're telling me the law. I'm asking for some facts. What do we know in this case now as to who these witnesses are in the process of what the DA's office knew about them? Are these people they haven't talked to yet that may or may not be worthwhile witnesses? Who are we dealing with factually before you tell me more about the law? Yes, Your Honor. The evidence in the record is that these were witnesses in ongoing cases. However, the time— What do you mean by that, witnesses? I mean, what I'm trying to figure out is were they trying to find out whether to call them, whether they knew anything or not, or are they just developing what they already knew further? Your Honor, that's a factual question that's answered by our allegations. And what the allegations say is that some of the witnesses were victims in the cases. Some of them were mere witnesses. So there's different facts for each one. But what matters here is that the prosecutors purported to do something that only the court could do. So this court doesn't have to engage in the sometimes difficult line-drawing exercise of determining where they were in the process of the trial. Because under Imbler, the key question for this court is, what was the function that the prosecutors were engaging in when they did the conduct at issue? And that conduct— That function is prepping for trial, which sounds prosecutorial. You're saying it's substituting for a judge. But they say they could even do that. They could fake an order from a judge as long as it's to get a witness to prep for trial. Your Honor, defendants' view is contrary to this court's precedent and the way other courts have analyzed the immunity issue. In Cousin v. Small, this court said that the key to the absolute immunity inquiry, the function that it's based on, is the conduct on which the claims is based. Here, that conduct is purporting to issue subpoenas that the Louisiana legislature has said only the court can issue. And courts have consistently found that just because there's some prosecutorial goal, that doesn't mean that conduct that is certainly not prosecutorial is immune. For example, in the Second Circuit's opinion in Doe v. Phillips, the prosecutor there told a criminal defendant that he would dismiss charges against him if the defendant would swear on the Bible that he was innocent. Now, the decision whether to bring charges or not, as counsel said, is at the heart of Embler. That is absolutely key to what Embler protects. But the Second Circuit still found that that conduct wasn't immune because the conduct that gave rise to the claims, asking the defendant to swear on a Bible, was not immune. In a Sixth Circuit case, Rouse v. Stacey, the prosecutor ordered a jail guard to beat a defendant in order to secure a guilty plea. Again, that served a prosecutorial goal, securing a guilty plea. That is unquestionably prosecutorial. Even so, the Sixth Circuit found that the conduct wasn't immune because the conduct at issue was not immune. In this court's 2016 opinion in Lupe v. O'Bannon, that case is very similar. In that case, the prosecutor ordered a sheriff's deputy to make a warrantless arrest of a witness, to your question, Judge Southwick, in an ongoing criminal case. That case was post-indictment, and the prosecutor's conduct was in direct response to that witness's in-court testimony. And even so, this court found that the prosecutor was not immune because the prosecutor had, as this court said, taken upon itself to determine whether or not an arrest should issue, and that was outside of the prosecutor's function. Counsel, insofar as the prosecutor's function, again, looking at where the allegations are, what they are about these witnesses, and you've told me as to who they are, there's nothing on the—I don't know if all the subpoenas are alike. I have a form in front of me. I don't know if it applies to all of them. It doesn't say it's from a court. The word court's on here. It seems to indicate it's from the office of the Orleans Parish. It makes the false allegation about a fine and imprisonment, but—and then it has a variety of other things on here. There's even a reference to I received the process of court, which I suppose means the subpoena. My question, I guess, is would they have absolute immunity so long as it's the right kind of witness? If it was clear from the subpoena that it was not issued by a court, that it was from the DA's office, they assert if you don't respond to our demand that you show up, that you can be fined or imprisoned, would that be covered by absolute immunity? Your Honor, what matters here is whether the prosecutors were purporting to do something that only a court can do. Well, that's not—I'm saying they don't—you know, I don't know how much the layperson would know what a court can do, what a district attorney would do. If they don't assert in any way, other than whatever the suppositions by the recipient might be, if there's no assertion at all that it's from a court, and they are summoning witnesses that are at the advocacy stage of the Embler dichotomy, what about that? Well, Your Honor, here, if the prosecutor's merely told witnesses you have to come and meet with me— Or you can be fined or imprisoned. I mean, they make the false statement. It seems to me the line is not whether they did something they shouldn't have done, or even made a false statement, even lied, which this is a lie. Right. It is still a matter of whether or what role they were performing. So is the problem here solely, insofar as absolute immunity, that you could read into this, that is a subpoena issued by a court? Your Honor, the Louisiana legislature said only the court can compel a witness to meet with a prosecutor. And these documents, on the whole, create the unmistakable impression that the person who receives it is legally compelled to meet with the prosecutors here. And by creating that impression, the prosecutors got to enjoy a power that was reserved by the legislature for the courts. And that's what makes this such a clear-cut case. Doesn't Ember allow them to lie and say, this is going to happen to you if you don't do what we want you to do, in light of our efficacy side of things? Absolutely, Your Honor. And let me give you an example. The opposing counsels pointed out cases in their brief, like Prince, Cousin, and Mowbray, where the prosecutor suppressed expropriatory evidence. I didn't hear the word cousin once from him. Excuse me? I didn't hear the word cousin once from him. Cousin? Perhaps. Perhaps. Cousin. Unfortunately, I can't speak to that, Your Honors. I liked it. I wish you could do that, too. If I try to change my pronunciation midstream, this argument is going to collapse. But, Your Honor, in those three cases, the prosecutor suppressed expropriatory evidence. That was found to be immune. But the decision whether to suppress or disclose expropriatory evidence is uniquely the prosecutor's decision. It is core to the prosecutor's function to decide what sort of material to turn over to defense counsel. And if the prosecutor lies in the course of doing that, if he acts wrongfully in the course of doing that, all of that conduct is still immune. And that's why, even when in Cousin the prosecutor said to the witnesses, hey, go stay in my office in order to avoid defense counsel being able to meet with them, this court said, well, that's still in the category of conduct in which a prosecutor is allowed to engage. They're managing their witnesses before trial. Here, we have something entirely different. And the fact that it doesn't have a pretend judge's signature in the end, now, of course, that would be strong evidence. But what we have here, for our purposes, is just as dispositive. Because this document says to its recipient, you have a legal obligation to comply. And that's not something that any prosecutor is empowered to do. Now, counsel pointed out that none of the plaintiffs in this case actually reported to the district attorney's office. I want to speak to that. We specifically alleged that each of the plaintiffs who received these false documents believed that they were real. That's in our allegations, and we're at the motion to dismiss stage. So that's significant. And the reason they didn't comply is a little more complex than has been suggested. So, for example, with Plaintiff Singleton, Ms. Singleton received a fake subpoena. She alleged that she believed it was real. She consulted with a friend who was a law enforcement officer who, as we specifically alleged, also believed it was real. But the law enforcement officer told her, you don't have to comply because it was improperly served. It was left on your car. With the case of Bailey and Lacroix, both believed the documents were real and specifically alleged that they were terrified that they would be sent to jail as a result of these documents. They believed that they weren't at liberty to travel or leave the state. And they both did exactly what you would do when you received a binding legal document that you weren't sure how to address. They hired counsel to move to quash it, even though, of course, there was not something to quash. Counsel, can you do some cleanup work for us here? Is this the only issue remaining now in the case with all the things that have been settled or resolved? Yes, Your Honor. The sole basis that defendants had for bringing other constitutional merits claims into the case was a purported, implicit, silent denial of absolute immunity by the district court. Those claims have now been dismissed. They're out of the case. You can see that in defendants' 28-J letter from January 3rd. So qualified immunity, failure to supervise, any of that's all, everything's gone except for this one issue. Yes. On these people. All of those things are gone. The opposing counsel did suggest that there was an additional reason to hear the state law claims for prudential reasons, simply because this court hearing the state law claims would serve the purposes of immunity. However, the U.S. Supreme Court has rejected that. The U.S. Supreme Court in Swint v. Chambers County Commission reversed the Eleventh Circuit when it took on appendant claim for solely prudential reasons. The court said— You don't like that? Your Honor, yes. I believe Swint is in our brief. However, I'm happy to give you the citation just in case. That's 514 U.S. 35. And what the U.S. Supreme Court said in Swint is that in order to take on appendant claim, it has to be inextricably intertwined with the claims on appeal. Now, defendants have never argued that any claim is inextricably intertwined with the absolute immunity question, and it would be very hard for it to do that because that's quite an exacting standard. In Gross v. City of Grand Prairie, Texas, that is certainly in our motion to dismiss briefing, this court said what you're really looking for is identical elements and facts. You're looking for a nearly exact match. And, of course, the claims here have entirely different elements. It would be entirely different legal questions. Are there any more questions on the jurisdictional issue? All right. Your Honor, I want to address one thing that counsel stated, which was that counsel portrayed our argument as one that any illegal conduct is not entitled to immunity. But that's not what we're arguing at all. Of course, illegal conduct, if it's prosecutorial, is entitled to immunity. However— So you think the same order would be exempt from absolute immunity? Yes, because the prosecutor was stepping into a role that is exclusively reserved for the courts and really purporting to do something, compel witnesses to speak to them, that only a court can do. And courts have repeatedly looked to— That's the core of your argument. That's the core of our argument. Of course, we have an independent basis. There's a second independent reason the conduct's not immune in our view, which is that it was investigative conduct. But this court doesn't need to walk through that. That would be a fact question. We think based on our allegations the conduct was investigative, but we also think the court needn't engage in that because here the legislature and, frankly, the defendants have made this a simple, narrow case because the legislature said, we know this isn't prosecutorial because it's only judicial. And the prosecutors made it abundantly clear with these documents, which you can see in the record at 715 paragraph 38. These look like documents that legally compel someone to do something. They are genuinely standing in the shoes that only the court can occupy. And courts have repeatedly looked to the law, not because the question at issue in the immunity inquiry is lawfulness, but because sometimes, like here, the law tells you whether or not something is part of a prosecutor's role. So in Lacey – The state can define that. The state could have issued a statute that says prosecutors can issue subpoenas, but since they made it clear they can't, then it takes it out of the prosecutorial realm. That's your point. Regardless – Absolutely. Absolutely. Well, let me make sure I understand your answer to that. It looked like you were going on. I'm not sure exactly how you took the question, but let me ask it this way. Is the mere prohibition of a certain conduct enough? We've talked earlier about illegal conduct by prosecutors, so long as it was when their role at the right stage of a prosecution is all right. So are you saying it's not the illegality of it, it's that it belongs to another part of government? Exactly, Your Honor. Mere prohibition isn't enough. And what courts have consistently analyzed across the circuits is when there's a law or even a court order that makes it clear that something is the province of some other actor and the prosecutor stands in that role, the prosecutor's not immune. So, for example, in Lacey v. Maricopa County, that was an en banc opinion by Judge Bybee where the court unanimously found that the prosecutor wasn't immune for doing almost exactly what happened in this case, issuing grand jury subpoenas, even though Arizona law states that those subpoenas can only be issued by a grand jury or a judge. And the court noted that Arizona law provided the bounds of prosecutors' behavior there, not in the sense that it mattered whether or not it was illegal, but in the sense that it told you, it gave you the answer to the question in Imbler, is this a prosecutorial function? A similar case is Simon v. City of New York. There, the Second Circuit looked both at the fact that what the prosecutor had done there was not authorized for any prosecutor to do under New York law and the fact that the prosecutor had disobeyed a court order to do it, had done something outside the bounds of what the court had authorized. And then this court in Doe v. Harris County relied on that and said the crux of immunity in Simon was compliance with the court's order. So courts have consistently used law as a way to understand and define what the prosecutor's role is. So if you lie in the material witness, that's protected, but you make up a subpoena, that's not protected. And it's only because of the function of who can issue those documents. Absolutely. And I can get even closer here. To use the example that counsel mentioned for Jane Doe, if prosecutors had applied for an Article 66 subpoena and lied in that application, putting aside the question whether this was investigative, that could be a separate reason it's not immune. But let's say it's not. Let's say it was about marshalling evidence in witness prep. If they had lied... And they got it. And they got it, they would be immune for that conduct. You'd have a qualified immunity discussion about their lying under Franks and all of that. Exactly. It would be a Franks question. That's right. Okay. Do you have anything further? Yes, Your Honor. I want to speak briefly to the policy issues in this case, because as you pointed out, Judge Elrod, in Imbler, in addition to looking at the function test, we looked to whether the function at issue furthers the policy concerns that undergirded the court's reasoning in Imbler when it applied absolute immunity to prosecutors in 1983 cases. The amici in this case provide some helpful information on that. There's a brief by former and current prosecutors, attorneys general, and Justice Department officials. Now, all of them firmly support the doctrine of absolute immunity. But they point out that this actually undermines the purposes of absolute immunity because it erodes the trust between prosecutors and witnesses. As you pointed out again, when a prosecutor takes on the role of a court and starts compelling people to meet with them, they get to skip the other steps of cultivating relationships with witnesses that prosecutors might be encouraged to engage in. You can also see that in the amicus brief by the victim's advocacy groups that was filed in this case. We don't have to go this policy place in order to rule on your behalf, do we? You don't, Your Honor. You could do either one. You could, Your Honor, but it also comes in our favor. Okay. Yes, Your Honor. The Louisiana legislature has given you the answer to the function test in Imbler. The Louisiana legislature said this is exclusively the province of the courts and not the province of a prosecutor to compel a witness to meet with a prosecutor. That's what they were doing here when they created these documents. Anything further? No, Your Honor. If you have no other questions. Thank you. We have your argument. Thank you. Counsel, you've saved time for rebuttal. Thank you, Your Honor, and I will be brief. In terms of the issue about standing in the shoes of the court, we think that that focus is not what Imbler, Kuzan, and the absolute immunity cases require. The analysis for absolute immunity is to look at the activity and determine whether it was engaged in by the prosecutors pursuant to their role as an advocate. Is it part of them presenting the state's case for trial and preparing for trial? And we think that it's very important that the focus be on the conduct of trying to arrange meetings with witnesses, contacting witnesses, trying to meet with them. The prosecutors have every right to do that. There is certainly no legal prohibition, and I think it's important because you've heard that the Louisiana legislature has said that only the court can order these sorts of meetings. But there are meetings every day between prosecutors and witnesses that are not subject to court orders or court intervention. Because you can call them up and say, Ms. Singleton, I would like you to come in and meet with me, and nothing would prevent that. That's right. But then she would feel like she could say no versus getting a subpoena, which makes you feel like you can't say no. That's right. And so if they go the next step, and they do, and in fact in this particular case Ms. Rowe was mentioned, the state did file an Article 66 application for Ms. Rowe, and the meeting with her happened pursuant to a court order. And that, Judge Elrod, we believe that that is subject to absolute immunity. And they have allegations about how that meeting unfolded, but we think that clearly all of that conduct is subject to the absolute immunity. How do you deal with the Loop case or the O'Bannon case, if you call it? Sure. I think that in that case the court said that they ordered, the prosecutor ordered a warrantless arrest. Now the court in that case upheld absolute immunity on the malicious prosecution claim, but it said that when the assistant district attorney goes and tells a courtroom deputy, put her under arrest, that that's not part of the function of the prosecutor. There wasn't an indictment. There wasn't any pending charges. She basically was assuming the role of a police officer. What is distinct here and why we can't just say, well, these assistant district attorneys were stepping into the role of the court, is that they weren't looking to be the judge in these cases. They were looking to meet with these witnesses. Now, the documents that you guys have referred to, you say, well, this is deceptive. This court recognized in Kuzan that even deceptive methods are subject to the absolute immunity. But the issue wasn't that they were trying to become the judge. They were trying to meet with the witnesses so they could prepare their case for trial. And I understand. I mean, look, these sorts of distinctions is the reason why a lot of these opinions are so lengthy. But we think it's absolutely critical, and where the courts come down time and again is, what are they trying to accomplish? What is the goal of it? And when the goal is to meet with these witnesses, that's what brings it within the absolute immunity. In terms of Article 66, and Judge Southwood, your questions about the specific facts of this case, I will say that Allegations of the case. I'm sorry. Specific allegations, I guess, of this case so far. Yes. There is a good reason why, and Article 66, by the way, appears to be used very sparingly in Louisiana. If you use it, then you are identifying the witness, and you are signaling to the criminal defendant, who may not know of the witness who saw him openly brandish an AK-47, who that witness is. You're telling them this is the witness. You have two plaintiffs in this case who asked to proceed under pseudonym. One of them said that if my name is revealed, my life is in danger. So there are reasons why prosecutors do what they can to try to arrange these meetings privately, and not in every instance go and use the Article 66. And I see that my time is up. Thank you all for your time and questions. Thank you. We have your argument. We appreciate the arguments of counsel in this case. This case is submitted, and the court will stand.